No. 14-2342

━━━━━━━━━━━━━━━━━━━

IN THE

# United States Court of Appeals
### FOR THE FOURTH CIRCUIT

━━━━━━━━━━━━━━━━━━━

WEST VIRGINIA CWP FUND, as carrier for PEN COAL CORPORATION,

*Petitioner*,

v.

STEVEN MULLINS, and

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS,
UNITED STATES DEPARTMENT OF LABOR,

*Respondents*

━━━━━━━━━━━━━━━━━━━

ON PETITION FOR REVIEW OF A DECISION AND ORDER
OF THE BENEFITS REVIEW BOARD
UNITED STATES DEPARTMENT OF LABOR

━━━━━━━━━━━━━━━━━━━

**OPENING BRIEF OF PETITIONER,
WEST VIRGINIA CWP FUND
PUBLIC REDACTED VERSION**

━━━━━━━━━━━━━━━━━━━

Jeffrey R. Soukup
William S. Mattingly
Jackson Kelly PLLC
175 E. Main St., Ste. 500
Lexington, KY 40507
(304) 284-4100
jrsoukup@jacksonkelly.com
*Counsel for West Virginia CWP Fund*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

No. 14-2342          Caption: West Virginia CWP Fund v. Steven Mullins

Pursuant to FRAP 26.1 and Local Rule 26.1,

West Virginia CWP Fund, who is Petitioner, makes the following disclosure:

1.  Is party/amicus a publicly held corporation or other publicly held entity?
    _____YES   _X_ NO

2.  Does party/amicus have any parent corporations?   _X_ YES   _____NO

    Pen Coal Corporation was a subsidiary of Pen Holdings, Inc., a
    Tennessee Corporation which was administratively dissolved in
    September 2004.

3.  Is 10% or more of the stock of a party/amicus owned by a publicly held
    corporation or other publicly held entity?   _____YES   _X_ NO

    See Response to Question 2.  Pen Coal Corporation is named as a
    party to the proceedings pursuant to 20 C.FR. § 725.360(a), but it does
    not have any direct financial interest in this case because it is fully
    insured by the West Virginia CWP Fund, an entity of the State if West
    Virginia, for any federal black lung benefits which may be awarded to
    Mr. Mullins.

4.  Is there any other publicly held corporation or other publicly held entity that
    has a direct financial interest in the outcome of the litigation (Local Rule
    26.1(b))?
        _____YES   _X_ NO

5.  Is party a trade association?
        _____YES   _X_ NO

6.  Does this case arise out of a bankruptcy proceeding?
        _____YES   _X_ NO

/s/ Jeffrey R. Soukup_____          February 10, 2015
Counsel for West Virginia CWP Fund

# TABLE OF CONTENTS

I.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION ........................................................................1

II.   STATEMENT OF THE ISSUES ................................................................2

       1.    Dr. Gaziano diagnosed legal pneumoconiosis based solely on an inflated dust-exposure history. Did the agency fact-finder err as a matter of law in crediting the Dr. Gaziano's opinion as "well-reasoned"?..............................2

       2.    Dr. Gaziano diagnosed legal pneumoconiosis based solely on an inflated dust-exposure history. Did the agency fact-finder err as a matter of law in crediting the Dr. Gaziano's opinion as "well-reasoned"?..............................2

       3.    Dr. Repsher and Dr. Dahhan offered well-reasoned and well-documented medical assessments explaining that Mr. Mullins is disabled due to smoking and not coal mine dust. Did the ALJ err in rejecting Dr. Repsher's and Dr. Dahhan's causation assessments? ........................................2

III.  STATEMENT OF THE CASE ..................................................................3

     A.   Procedural History ...............................................................3

     B.   Relevant Facts.......................................................................6

IV.  SUMMARY OF ARGUMENT ................................................................9

V.   ARGUMENT ........................................................................................11

     A.   Standard of Review............................................................11

     B.   Discussion of Issues..........................................................12

       1.    The ALJ erred by crediting Dr. Gaziano's opinion to find legal pneumoconiosis and disability causation ........................12

i

2.  The ALJ failed to weigh all relevant evidence together in finding pneumoconiosis established by Dr. Alexander's CT-scan interpretation. ...........................................................26

3.  The ALJ erred by discrediting the well-reasoned and well-documented opinions of Drs. Repsher and Dahhan. ........30

VI.  CONCLUSION ...........................................................................38

VII.  REQUEST FOR ORAL ARGUMENT. .....................................................39

VIII.  ADDENDUM OF STATUTES, RULES, AND REGULATIONS..............40

IX.  CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

X.  CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

## Cases

*A & E Coal Co. v. Adams*,
  694 F.3d 798 (6th Cir. 2012) ............................................................ 18

*Allentown Mack Sales and Serv., Inc. v. NLRB*,
  522 U.S. 359 (1998) .................................................................13, 20

*Anderson v. Director, OWCP*,
  455 F.3d 1102 (10th Cir. 2006) ...............................................15, 23

*Bill Branch Coal Corp. v. Sparks*,
  213 F.3d 186 (4th Cir. 2000) ....................................................13, 20

*Clark v. Karst-Robbins Coal Co.*,
  12 Black Lung Rep. (Juris.) 1-149 (Ben Rev. Bd. 1989) (en banc) ................... 18

*Conley v. Nat'l Mines Corp.*,
  595 F.3d 297 (6th Cir. 2010) ............................................................ 18

*Consol. Edison Co. of N.Y. v. NLRB*,
  305 U.S. 197 (1938) ....................................................................... 11

*Director, OWCP v. Greenwich Collieries*,
  512 U.S. 267 (1994) .................................................................12, 35

*Dickson v. Sec'y of Defense*,
  68 F.3d 1396 (D.C. Cir. 1995) ......................................................... 19

*Dixie Fuel Co v. Director, OWCP*,
  700 F.3d 878 (6th Cir. 2012) .......................................................... 27

*Dehue Coal Co. v. Ballard*,
  65 F.3d 1189 (4th Cir. 1995) ........................................................... 11

i

## TABLE OF AUTHORITIES (continued)

*E. Assoc. Coal Corp. v. Director, OWCP*,
    220 F.3d 250 (4th Cir. 2000) ............................................................... 13

*Fields v. Island Creek Coal Co.*,
    10 Black Lung Rep. (Juris.) 1-19 (Ben. Rev. Bd. 1987).................................... 14

*Harman Mining Co. v. Director, OWCP*,
    678 F.3d 305 (4th Cir. 2012) ............................................................... 17

*Hillibush v. Dep't of Labor*,
    853 F.2d 197 (3d Cir. 1988) ............................................................... 13

*Island Creek Coal Co. v. Compton*,
    211 F.3d 203 (4th Cir. 2000) ...................................................... 11, 27, 31

*Island Creek Coal Co. v. Henline*,
    456 F.3d 421 (4th Cir. 2006) ............................................................... 24

*Jordan v. Benefits Review Bd.*,
    876 F.2d 1455 (11th Cir. 1989) ......................................................... 14

*Justice v. Consolidation Coal Co.*,
    11 Black Lung Rep. (Juris.) 1-91 (Ben. Rev. Bd. 1998).................................... 18

*Kiser v. L & J Equip. Co.*,
    23 Black Lung Rep. (Juris.) 1-246 (Ben. Rev. Bd. 2006)................................. 23

*Kopp v. Director, OWCP*,
    877 F.2d 307 (4th Cir. 1989) ............................................................... 3

*Lane Hollow Coal Co. v. Director, OWCP*,
    137 F.3d 799 (4th Cir. 1998) ............................................................... 21

*Milburn Colliery Co. v. Hicks*,
    138 F.3d 524 (4th Cir. 1998) ..................................................... 11, 13, 15, 18

## TABLE OF AUTHORITIES (continued)

*Migliorini v. Director, OWCP*,
  898 F.2d 1292 (7th Cir. 1990) ........................................................... 14

*N. Am. Coal Co. v. Miller*,
870 F.2d 948 (3d Cir. 1989)................................................................. 13

*Peabody Coal Co. v. Hale*,
  771 F.2d 246 (7th Cir. 1985) ............................................................. 13

*S.E.C. v. Chenery Corp.*,
  332 U.S. 194 (1947) ........................................................................... 24

*In re Simon II Litig.*,
  211 F.R.D. 86 (E.D.N.Y. 2002) ........................................................... 6

*Sterling Smokeless Coal Co. v. Akers*,
  131 F.3d 438 (4th Cir. 1997) ............................................................. 11

*Tamraz v. Lincoln Elec. Co.*,
  620 F.3d 665 (6th Cir. 2010) ............................................................. 19

*Worhach v. Director, OWCP*,
  17 Black Lung Rep. (Juris.) 1-105 (Ben. Rev. Bd. 1993)......................21, 22, 29

## Statutes

Administrative Procedures Act
    5 U.S.C. § 557(c)(3)(A) ......................................................................20
    5 U.S.C. § 557(c)(3)(A) ......................................................................31

Black Lung Benefits Act
    30 U.S.C. § 901 ...................................................................................17
    30 U.S.C. § 923(b)...........................................................................21, 33
    30 U.S.C. § 932(a) ...........................................................................1, 13

## TABLE OF AUTHORITIES (continued)

Longshore and Harbor Workers' Compensation Act
  33 U.S.C. § 919(d).......................................................................13
  33 U.S.C. § 921(c)......................................................................1, 4
  33 U.S.C. § 921(c)(3)..................................................................12

## **Regulations**

Part 718: Standards for Determining Coal Miner's Total Disability or Death Due to Pneumoconiosis
  20 C.F.R. § 718.107.............................................................4, 26, 29
  20 C.F.R. § 718.2.........................................................................3
  20 C.F.R. § 718.201(a)(1)............................................................12
  20 C.F.R. § 718.201(a)(2)..............................................................4
  20 C.F.R. § 718.201(b) ...................................................4, 16, 23, 35
  20 C.F.R. § 718.202....................................................................12
  20 C.F.R. § 718.202(a)(1)..............................................................3
  20 C.F.R. § 718.202(a)(2)..............................................................3
  20 C.F.R. § 718.202(a)(3)..............................................................3
  20 C.F.R. § 718.202(a)(4)............................................................14
  20 C.F.R. § 718.203(b) ...........................................................22, 23
  20 C.F.R. § 718.204....................................................................12

Part 725:  Claims for Benefits Under Part C of Title IV of the Federal Coal Mine Safety and Health Act, as Amended
  20 C.F.R. § 725.2.........................................................................3
  20 C.F.R. § 725.477(b) ...............................................................13
  20 C.F.R. § 725.482(a).................................................................1

Part 802: Rules of Practice and Procedure
  20 C.F.R. § 802.407  ..................................................................1, 6

## **Other Authorities**

  65 Fed. Reg. 79923 (Dec. 20, 2000)...........................................17

## I.    STATEMENT OF SUBJECT MATTER AND APPELLATE JURISDICTION

This matter involves an appeal from a final order of the United States Department of Labor Benefits Review Board ("Board"). This Court has jurisdiction over an appeal from a final order of the Board under the Longshore and Harbor Workers' Compensation Act ("LHWCA"), 33 U.S.C. § 921(c), as incorporated by the Black Lung Benefits Act ("BLBA"), 30 U.S.C. § 932(a). The Board affirmed the September 26, 2013 award of federal black lung benefits to Steven Mullins by United States Department of Labor ("DOL") Administrative Law Judge ("ALJ") Joseph E. Kane. Joint Appendix ("JA") 84.

The jurisdictional time limit for filing an appeal from a final order of the Board is 60 days. *See* § 921(c); 20 C.F.R. § 725.482(a). The Board issued an initial order affirming the award of benefits to Mr. Mullins on July 28, 2014. JA 84. The West Virginia CWP Fund (the "Fund"), as carrier for Pen Coal Corporation, timely filed a motion for *en banc* reconsideration by the Board on August 17, 2014. *See* 20 C.F.R. § 802.407. The Board denied the Fund's motion for *en banc* reconsideration in its final order issued on October 15, 2014. JA 92. The Fund filed its appeal with this Court on December 11, 2014. JA 95. The injury alleged, within the meaning of § 921(c), occurred in West Virginia. This Court has jurisdiction to review the Board's decision.

## II.  STATEMENT OF THE ISSUES

**4.**  **Dr. Gaziano diagnosed legal pneumoconiosis based solely on an inflated dust-exposure history.  Did the agency fact-finder err as a matter of law in crediting the Dr. Gaziano's opinion as "well-reasoned"?**

**5.**  **Did the agency fact-finder fail to weigh all relevant evidence together in finding clinical pneumoconiosis established solely by Dr. Alexander's CT-scan interpretation?**

**6.**  **Dr. Repsher and Dr. Dahhan offered well-reasoned and well-documented medical assessments explaining that Mr. Mullins is disabled due to smoking and not coal mine dust.  Did the ALJ err in rejecting Dr. Repsher's and Dr. Dahhan's causation assessments?**

2

# III.    STATEMENT OF THE CASE

## A.    Procedural History

The case concerns Steven Mullins' claim for federal black lung benefits, filed on March 18, 2005.[1]  JA 1.  The Department of Labor's ("DOL") Office of Workers' Compensation Programs denied benefits, and Mr. Mullins then requested a hearing.[2]  JA 39.

ALJ Joseph E. Kane initially denied benefits on November 19, 2009, finding Mr. Mullins could not establish necessary elements of clinical or legal pneumoconiosis and disability causation.  JA 46–54.  The ALJ found total disability established based on the pulmonary function testing.  JA 52. Mr. Mullins asked the Benefits Review Board to review the decision denying benefits.

On January 20, 2011, the Board vacated the benefits denial.  While the Board affirmed the ALJ's determination that the evidence does not establish pneumoconiosis under the specific criteria of 20 C.F.R. § 718.202(a)(1)–(3) (which includes analog chest x-ray evidence), the Board found the ALJ did not fully consider Dr. Dominic Gaziano's opinion regarding Mr. Mullins' length of

---

[1]    As Mr. Mullins' last coal mine employment occurred in West Virginia, the law of the United States Court of Appeals for the Fourth Circuit applies to his claim.  *See Kopp v. Director, OWCP*, 877 F.2d 307, 308 (4th Cir. 1989).

[2]    Because this claim was filed after January 19, 2001, it is governed by 20 C.F.R. Parts 718 and 725.  *See* 20 C.F.R. §§ 718.2, 725.2.

3

employment.  JA 58–59.  The Board vacated the finding that the evidence was

insufficient to establish legal pneumoconiosis and instructed the ALJ to review all

physician-opinion evidence regarding legal pneumoconiosis.[3]  *See id.*  The Board

also vacated the ALJ's rejection of Dr. Alexander's reading of the March 2006

CT-scan and instructed the ALJ on remand to consider whether that CT-scan

reading, when weighed against Dr. Repsher's contrary reading, established

pneumoconiosis via "other medical evidence" as per 20 C.F.R. § 718.107.

JA 59-60.  Finally, the Board directed the ALJ to determine how many years of

coal mine employment Mr. Mullins has proven.

On remand, the ALJ reversed the prior decisions and awarded benefits in a

September 26, 2013 decision.  JA 65.  The ALJ found Mr. Mullins has only

11 years of coal mine employment, and thus could not invoke the 15-year

presumption of disability due to pneumoconiosis.  JA 70; *see* 30 U.S.C.

§ 921(c)(4).  Although Dr. Gaziano based his medical assessment and diagnosis on

the premise Mr. Mullins had 16 years of coal mine employment, rather than

11 years as the ALJ found, Dr. Gaziano's opinion was "fully credited" to find total

disability due to legal pneumoconiosis.  JA 73–74, 78–80.  The ALJ discredited the

---

[3]      "'Legal pneumoconiosis' includes any chronic lung disease or impairment
and its sequelae arising out of coal mine employment."  20 C.F.R. § 718.201(a)(2).
To diagnose legal pneumoconiosis there must be more than a de minimus effect by
coal mine dust as pneumoconiosis "includes any chronic pulmonary disease or
respiratory or pulmonary impairment significantly related to, or substantially
aggravated by, dust exposure in coal mine employment."  § 718.201(b).

4

contrary medical assessments by Drs. Lawrence H. Repsher and Abdul K. Dahhan. JA 74–77, 80. The ALJ found the 2006 CT-scan to be positive for pneumoconiosis, crediting Dr. Alexander, and in so finding concluded Mr. Mullins also has clinical pneumoconiosis. JA 77–78.

Aggrieved with the adverse decision, the Fund appealed to the Board. On July 28, 2014, the Board upheld the crediting of Dr. Gaziano's opinion and discrediting of Dr. Repsher's and Dr. Dahhan's opinions. JA 84. Dr. Gaziano's medical opinion was deemed well-reasoned because he "based his diagnosis of legal pneumoconiosis on claimant's coal mine employment and smoking histories, a medical history, a physician examination, and the results of a pulmonary function study," and because the opinion "was supported by the results of his own objective testing, and accounts for [c]laimant's coal dust exposure, without ignoring his significant smoking history." JA 87–88. The Board also said "[o]n the facts of this case, we hold that the administrative law judge permissibly determined that the five year difference was not so significant that it undermined the credibility of Dr. Gaziano's opinion." JA 88. The Board also concluded that, because the ALJ rationally relied on Dr. Gaziano's opinion to find Mr. Mullins has legal pneumoconiosis, the ALJ also permissibly found Dr. Gaziano's opinion supports a finding Mr. Mullins is totally disabled due to legal pneumoconiosis. JA 89. The Board did not address the ALJ's finding of clinical pneumoconiosis.

The Fund moved for *en banc* reconsideration pursuant to 20 C.F.R. § 802.407.[4]  The Board denied reconsideration on October 15, 2014.  The Fund timely appealed the Board's final decision to this Court on December 11, 2014.

## B.    Relevant Facts

Mr. Mullins worked as an underground coal miner for Pen Coal Corporation from 1990 to 2001, and for RAG from August 2003 to March 2004, for a total of 11 years of coal mine employment.  JA 39.  In addition to occupational dust exposure, Mr. Mullins smoked between one half and two packages of cigarettes per day from the age of 16 until at least the age of 43.  *See* JA 40–41.  The ALJ found Mr. Mullins has a smoking history of approximately 26 pack years.[5]  JA 41.

The Fund introduced a medical assessment from Dr. Lawrence H. Repsher, who is board-certified in internal medicine, pulmonary disease, and critical care medicine.  ███████████████████████████████████  JA 124.

███████████████████████████████████████████████████

███████████████████████████  JA 125.  ███████████████████

███████████████████████████████████████████████  *Id.*

███████████████████████████████████████████

---

[4]    20 C.F.R. § 802.407 allows any party to request reconsideration of the Board's decision within 30 days from the filing of the decision.

[5]    A pack year is defined as "one package of cigarettes consumed per day per year." *In re Simon II Litig.*, 211 F.R.D. 86, 131 (E.D.N.Y. 2002).

6



JA 198–99.

JA 125.

JA 206.

JA 126, 201–03.

JA 126.

JA 126–27, 193, 197.

JA 146.

███████████████ JA 147. ████████████████████████████

███████████████████████████████████ *Id.* ████████████

██████████████████████████████████████ *Id.*

███████████████████████████████████████████████

██████████████████████████████████████████████████████

████ *See* JA 148. ██████████████████████████████████

█████████████ *See id.* █ ████████████████████████████

████████████████████████████████████████████████████

███████████████████████████████████ *See id.* ████████████

████████████████████████████████████████████

██████████████████████████████████████████████████████

████████████████████ *See id.*

██████████████████████████████████████

█████████████ JA 107. ███████████████████████████

████████████████████████████████████████████████

JA 109, 119. █████████████████████████████████████

██████████████████████████████ JA 110.

---

[6]    The Fund is relying on Dr. Harold Spitz's interpretation of that x-ray in lieu of Dr. Dahhan's interpretation. While both experts found no pneumoconiosis on the x-ray, Dr. Spitz possessed superior qualifications as a board-certified radiologist and NIOSH B-reader.

# IV.   SUMMARY OF ARGUMENT

In a claim for black lung benefits, a physician who relies solely on a claimant's dust-exposure history to diagnose legal pneumoconiosis has not rendered a reasoned medical opinion sufficient to support entitlement to black lung benefits.  An agency fact-finder errs as a matter of law in crediting such an opinion as sufficient to award benefits.  A determination of legal pneumoconiosis may be made if a physician, exercising sound medical judgment, notwithstanding a negative x-ray, diagnoses a chronic dust disease of the lungs arising out of coal mine employment.  Any such diagnosis shall be based on objective medical evidence and shall be supported by a reasoned medical opinion.  Coal mine dust must be a substantial contributor to the disease to be legal pneumoconiosis.

To be awarded benefits, a benefits claimant must establish a lung disease caused by coal mine dust exposure causing a totally disabling respiratory or pulmonary impairment.  The agency fact-finder credited just one medical opinion, that of Dr. Gaziano.  The fact-finder deemed Dr. Gaziano's opinion "well-reasoned" and conferred benefits based on it.  That finding is neither supported by substantial evidence nor well reasoned.

Dr. Gaziano's reasoning for diagnosing legal pneumoconiosis is that Mr. Mullins has a lung disease that arose out of his 16 years of work in coal mines. Mr. Mullins actually worked five years less than Dr. Gaziano presumed, as the

9

ALJ found 11 years of coal mine work. But, even an accurate history of coal mine dust-exposure is not sufficient to diagnose legal pneumoconiosis. In crediting Dr. Gaziano's opinion to be sufficient to establish a diagnosis of legal pneumoconiosis and entitlement to black lung benefits, the agency fact-finder set the bar to establish benefits too low. Not every retired coal miner proves he is afflicted with legal coal workers' pneumoconiosis simply by showing years of dust exposure and pulmonary impairment. The award of benefits in this case should be either reversed, or in the alternative, vacated and remanded for consideration consistent with law.

# V.   ARGUMENT

## A.   Standard of Review

In reviewing claims for benefits under the BLBA, this Court determines whether substantial evidence supports the findings of fact issued by the ALJ. *Dehue Coal Co. v. Ballard*, 65 F.3d 1189, 1193 (4th Cir. 1995).  Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938); *Milburn Colliery Co. v. Hicks*, 138 F.3d 524, 529 (4th Cir. 1998).  In determining whether substantial evidence supports the ALJ's factual determinations, the Court should address whether all relevant evidence has been analyzed and whether the ALJ has sufficiently explained the rationale used in crediting certain evidence.  *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439 (4th Cir. 1997).

The ALJ's and Board's conclusions of law are reviewed *de novo* to determine if they are rational and consistent with the law.  *See Ballard*, 65 F.3d at 1193; *see also Island Creek Coal Co. v. Compton*, 211 F.3d 203, 207–08 (4th Cir. 2000).

11

B.    **Discussion of Issues**

1.    **The ALJ erred by crediting Dr. Gaziano's opinion to find legal pneumoconiosis and disability causation.**

The agency avoids addressing whether there is a logical basis to credit Dr. Gaziano's diagnosis of legal pneumoconiosis. This Court should reverse the agency's finding that Dr. Gaziano's opinion is well-reasoned and should hold that Dr. Gaziano's opinion is unreasoned as a matter of law and deny benefits.

Mr. Mullins had the burden of proof to establish by a preponderance of the evidence: (1) pneumoconiosis; (2) the pneumoconiosis arose out of coal mine employment; (3) a totally disabling respiratory or pulmonary impairment; and (4) the disabling impairment is due to pneumoconiosis. 20 C.F.R. §§ 718.202–04; *see Director, OWCP v. Greenwich Collieries*, 512 U.S. 267, 280–81 (1994). The ALJ did not find Mr. Mullins to have clinical pneumoconiosis[7] and the record contains no evidence indicating complicated pneumoconiosis.[8] Mr. Mullins was

---

[7]    "Clinical pneumoconiosis" is defined as "those diseases recognized by the medical community as pneumoconioses, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment." 20 C.F.R. § 718.201(a)(1).

[8]    The federal black lung regulations provide an irrebuttable presumption of total disability due to pneumoconiosis if: (A) an x-ray of the miner's lungs shows at least one opacity greater than one centimeter in diameter; (B) a biopsy reveals massive lesions in the lungs; or (C) a diagnosis by other means reveals a result equivalent to (A) or (B). 30 U.S.C. § 921(c)(3). "The condition described by these criteria is frequently referred to as 'complicated pneumoconiosis,' although that

12

awarded benefits as the ALJ ruled he proved legal pneumoconiosis and total

disability due to legal pneumoconiosis.  Only Dr. Gaziano diagnosed legal

pneumoconiosis and assessed it to be the cause of disability.  The ALJ credited that

opinion as well-reasoned and well-documented, and based on that lone medical

opinion, found Mr. Mullins established that he has totally disabling legal

pneumoconiosis.

Dr. Gaziano's medical opinion is insufficient to establish disabling legal

pneumoconiosis by a preponderance of the evidence.  While an ALJ has great

discretion as a fact-finder to weigh conflicting evidence, there are limits to the

discretion afforded.  The Administrative Procedure Act ("APA")[9] requires

"reasoned decision-making."  *Allentown Mack Sales and Serv., Inc. v. NLRB*,

522 U.S. 359, 374 (1998).  The process by which the ALJ reaches his result must

be "logical and rational."  *Id.* at 374.  In black lung benefits claims, the ALJ must

adequately explain why certain evidence is credited and other evidence

discredited.  *Bill Branch Coal Corp. v. Sparks*, 213 F.3d 186, 193 (4th Cir.

2000); *Hicks*, 138 F.3d at 533.

---

term does not appear in the statute."  *E. Assoc. Coal Corp. v. Director, OWCP*, 220
F.3d 250, 255 (4th Cir. 2000).

[9]      The provisions of the APA are applicable to the BLBA through the
Longshore and Harbor Workers' Compensation Act.  *See* 33 U.S.C. § 919(d), as
incorporated by 30 U.S.C. § 932(a); *Hillibush v. Dep't of Labor*, 853 F.2d 197,
202 n.6 (3d Cir. 1988); *N. Am. Coal Co. v. Miller*, 870 F.2d 948, 951 (3d Cir.
1989); *Peabody Coal Co. v. Hale*, 771 F.2d 246, 248 (7th Cir. 1985); 20 C.F.R.
§ 725.477(b).

Dr. Gaziano concluded Mr. Mullins had legal pneumoconiosis and a totally disabling impairment due to pneumoconiosis based on an errant belief Mr. Mullins worked 16 years as a coal miner. Only 11 years of coal mine work was proven. JA 70. The ALJ gave no rationale why Dr. Gaziano's five-year misunderstanding (or about 1/3 more than actually found) in the miner's length of coal mine employment was insufficient to undermine Dr. Gaziano's credibility as he failed to correctly document the facts. *See* JA 74. The Board upheld the ALJ's crediting of Dr. Gaziano's diagnosis and the consequent finding of totally disabling legal pneumoconiosis. JA 87–88.

Dr. Gaziano's diagnosis of legal pneumoconiosis is not well-reasoned. Where pneumoconiosis is found established by evidence other than chest x-ray, pathology, or legal presumption, any such finding shall be based on objective medical evidence and shall be supported by a reasoned medical opinion. 20 C.F.R. § 718.202(a)(4). A well-reasoned medical opinion rests on documentation adequate to support the physician's conclusions. *See Fields v. Island Creek Coal Co.*, 10 Black Lung Rep. (Juris.) 1-19 (Ben. Rev. Bd. 1987); *Migliorini v. Director, OWCP*, 898 F.2d 1292, 1295 (7th Cir. 1990); *Jordan v. Benefits Review Bd.*, 876 F.2d 1455, 1460 (11th Cir. 1989). A history of coal mine dust exposure alone is insufficient to substantiate a diagnosis of a coal mine dust-induced lung

14

disease as well-reasoned.  *See Hicks*, 138 F.3d at 536–37; *see also Anderson v.*

*Director, OWCP*, 455 F.3d 1102, 1105 (10th Cir. 2006).

Dr. Gaziano provided no basis for his diagnosis of legal pneumoconiosis

other than an erroneously inflated coal mine dust exposure history.  █████

███████████████████████████████████████████

██████████

    ████████████████████████████████████

    ██████████████████████

    █████████████████████████████████████

    █████████████████████████████████

    ████████████████████████████████████████

    █████████████████████████████████████████

    ███████████████████████

JA 110 ███████████████████████████████████████

███████████████████████████

    ██ ██ ███████████████████████████



JA 221–22.

Dr. Gaziano relied solely on Mr. Mullins' coal mine dust exposure history to diagnose legal pneumoconiosis, and relied on a substantially inflated understanding of the dust exposure.  Under the black lung regulations, for lung disease or pulmonary impairment to "arise out of coal mine employment" and be considered legal pneumoconiosis, the disease or impairment must be "significantly related to" or "substantially aggravated by" dust exposure in coal mine employment.  20 C.F.R. § 718.201(b).  Rather than offer a medical reason that the obstruction "arose out of coal mine employment," Dr. Gaziano assumed, based on

16

an inflated understanding of Mr. Mullins' employment, that COPD did arise out of coal mine dust exposure. This is not a reasoned medical opinion, but a misapplication of legal presumptions by a physician rendering a medical opinion. Dr. Gaziano's differential causation opinion is no more than a bare conclusion devoid of reasoning.

Such an opinion is out of step with the purpose of the Act and scientific literature the agency discussed in its preamble to the 2000 revisions to the black lung regulations. Congress established this program to provide disability benefits to those disabled by chronic coal mine dust-induced lung diseases, not to confer benefits on all coal miners with a lung disease. 30 U.S.C. § 901. In promulgating regulations, the agency notes that not all COPD is due to coal mine dust exposure and that a benefits claimant must show the causal link of COPD to employment. *See* 65 Fed. Reg. 79923 (Dec. 20, 2000) ("The Department attempts to clarify that not all obstructive lung disease is pneumoconiosis. It remains the claimant's burden of persuasion to demonstrate that his obstructive lung disease arose out of his coal mine employment and therefore falls within the statutory definition of pneumoconiosis."); *id.* at 79938 ("The Department reiterates . . . that the revised definition does not alter the former regulations' requirement that each miner bear the burden of proving that his obstructive lung disease did in fact arise out of his coal mine employment, and not from another source."); *see also Harman Mining*

17

*Co. v. Director, OWCP*, 678 F.3d 305, 314–15 (4th Cir. 2012); *A & E Coal Co. v. Adams*, 694 F.3d 798, 801–02 (6th Cir. 2012). The mere fact that cigarette smoking makes such proof more difficult is irrelevant to the legal burden that must be met.

Even if it were otherwise legally sufficient to diagnose legal pneumoconiosis solely from a history of dust exposure (and it is not, *see Hicks*, 138 F.3d at 536-37), common sense mandates a physician rely on the correct dust-exposure history. Dr. Gaziano relied on a dust-exposure history almost half again as long as the ALJ found Mr. Mullins' exposure was proven. As Dr. Gaziano relied on an inaccurate and substantially increased exposure to coal mine dust without any other basis for finding legal pneumoconiosis, his opinion was unreasoned and should not have been accorded weight. *See Justice v. Consolidation Coal Co.*, 11 Black Lung Rep. (Juris.) 1-91 (Ben. Rev. Bd. 1998); *Clark v. Karst-Robbins Coal Co.*, 12 Black Lung Rep. (Juris.) 1-149 (Ben. Rev. Bd. 1989) (en banc). At the very least, the ALJ must address and resolve this substantial factual discrepancy and explain the impact on the weight accorded the medical analysis.

Dr. Gaziano's diagnosis is little more than a bald conclusion. Conclusory opinions are not reasoned opinions. *See Conley v. Nat'l Mines Corp.*, 595 F.3d 297, 303–04 (6th Cir. 2010) (physician's conclusory and unsupported opinion generally linking miner's pneumoconiosis to his death from lung cancer was

insufficient to support ALJ's determination that miner's death was hastened by legal pneumoconiosis, where physician's opinion failed to specifically define process of why, how, and to what extent pneumoconiosis hastened miner's death); *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 667–71 (6th Cir. 2010); *see also Dickson v. Sec'y of Defense,* 68 F.3d 1396, 1407 (D.C. Cir. 1995) ("Because the [agency] only listed the facts and stated its conclusions, but did not connect them in any rational way, the [agency's] decisions are arbitrary and capricious."). Dr. Gaziano only identified possible causation factors; he did not give a medical explanation making a causal connection between Mr. Mullins' COPD and his dust exposure.

The same ALJ had originally concluded that Dr. Gaziano's mistaken understanding of Mr. Mullins' dust-exposure history rendered the medical opinion unpersuasive and insufficient to support awarding benefits. JA 48. The Board then required the ALJ to reconsider Dr. Gaziano's diagnosis of legal pneumoconiosis in light of the "five year discrepancy between the sixteen years of coal mine employment relied on by Dr. Gaziano and the eleven years credited by the administrative law judge." JA 58. The Board also required the ALJ to "provide a more detailed explanation of his credibility determination regarding Dr. Gaziano's opinion on legal pneumoconiosis." *Id.*

19

On remand, the ALJ reversed his previous finding about the significance of

Dr. Gaziano's mistaken understanding of Mr. Mullins' dust-exposure history:

> Dr. Gaziano relied upon his understanding that Claimant worked in coal mine employment for sixteen years. I have again found that Claimant worked in coal mine employment for eleven years. Upon further reflection of the record before me, I now find that the difference between sixteen and eleven years is insufficient to undermine the credibility of Dr. Gaziano's opinion that claimant suffers from legal pneumoconiosis.

JA 74. The ALJ then credited Dr. Gaziano's opinion as well-reasoned and

concluded from it that Mr. Mullins has totally disabling legal pneumoconiosis:

> Dr. Gaziano's opinion regarding Claimant's COPD is supported by the results of his own objective medical testing, and accounts for Claimant's coal dust exposure, without ignoring his significant smoking history. Accordingly, I find Dr. Gaziano's diagnosis of COPD, caused in part by coal dust exposure, is a reasoned and documented diagnosis of legal pneumoconiosis, and I give his opinion full probative weight on that issue.

*Id.*; *see* JA 78, 79–80.

The decision fails to provide rationale sufficient to support crediting

Dr. Gaziano's opinion. An ALJ must weigh all relevant evidence in reaching

findings of fact and conclusions of law. The APA provides in pertinent part:

> All decisions including initial, recommendation, and tentative decisions are a part of the record and shall include a statement of (A) findings and conclusions, *and the reasons or basis therefore on all material issues of fact, law or discretion presented on the record*[.]

5 U.S.C. § 557(c)(3)(A) (emphasis added); *see Allentown*, 522 U.S. at 374;

*see also Sparks*, 213 F.3d at 193. All relevant evidence must be considered in

20

deciding whether a black lung claimant is entitled to benefits. 30 U.S.C. § 923(b).

An ALJ errs when he fails to provide adequate bases by which he reached his

conclusions. *See Lane Hollow Coal Co. v. Director, OWCP*, 137 F.3d 799, 807-08

(4th Cir. 1998).

A reader of the decision knows what the ALJ found, but not why the facts

convinced the ALJ to rule as he has. *See id.* at 803 (must be able to "understand

what the ALJ did and why he did it" to satisfy the APA). The ALJ failed to

explain how Dr. Gaziano's overestimation of Mr. Mullins' dust-exposure history

could be insignificant where the lone basis for the diagnosis of legal

pneumoconiosis was Mr. Mullins' dust-exposure history. The ALJ simply

reiterated portions of the Board's 2011 decision: (1) that *Worhach v. Director,*

*OWCP*, 17 Black Lung Rep. (Juris.) 1-105, 1-110 (Ben. Rev. Bd. 1993), which

supports discrediting medical opinions based on inaccurate employment histories,

should not be applied "mechanically"; and (2) that the Board found Mr. Mullins'

argument persuasive that his employment was still "significantly greater" than the

10 years of employment sufficient to trigger the presumption of pneumoconiosis

causation. *See* JA 73–74. Yet, the ALJ did not adopt either rationale for finding

Dr. Gaziano's opinion credible despite the erroneous dust-exposure history

considered.

These provisions of the Board's 2011 decision do not support disregarding Dr. Gaziano's reliance on an inflated dust-exposure history. While *Worhach* should not be "mechanically applied" does not mean it does not apply at all. The ALJ should have determined whether the principle in *Worhach* supports discrediting Dr. Gaziano's opinion in this case. *Worhach* instructs it is appropriate to discredit a medical opinion based on an inaccurate coal mine dust exposure history. In *Worhach*, four years of employment were found, as opposed to the eight assumed by the medical experts. *See* 17 Black Lung Rep. at 1-110. While Dr. Gaziano did not double Mr. Mullins' exposure history as the physician in *Worhach* did, the holding still directly applies—an accurate dust-exposure history is significant to accurately assessing the presence of pneumoconiosis and its contribution to total disability. This is especially germane here as Dr. Gaziano's analysis is driven entirely by the dust-exposure history.

Second, the fact that pneumoconiosis is legally presumed to be due to coal mine dust with 10 years of dust exposure, *see* 20 C.F.R. § 718.203(b), is not relevant to analyzing a physician's diagnosis of legal pneumoconiosis or causation assessment of COPD. The relevant issue with Dr. Gaziano's opinion is whether it establishes Mr. Mullins has legal pneumoconiosis. The 10-year causation presumption is relevant only to clinical pneumoconiosis, as a finding of legal pneumoconiosis necessarily subsumes a finding that the pneumoconiosis arose out

22

of coal mine employment.  *See Anderson*, 455 F.3d 1102 (10-year

pneumoconiosis-causation presumption does not extend to diagnoses of legal

pneumoconiosis); *see also Kiser v. L & J Equip. Co.*, 23 Black Lung Rep. (Juris.)

1-246 (Ben. Rev. Bd. 2006) ("The Director notes that because the administrative

law judge found the existence of legal pneumoconiosis, she erred in applying the

presumption of causation found at Section 718.203(b).").  Because Dr. Gaziano did

not diagnose clinical pneumoconiosis, the fact that the true dust-exposure history

and the inflated history Dr. Gaziano assumed both exceed 10 years does not

suggest that Dr. Gaziano's overestimate of that history is not relevant to his

opinion's credibility.  The ALJ failed to take this consideration into account in

evaluating Dr. Gaziano's causation assessment that lacks any explanation, but for

mine employment alone, for why COPD arose out of coal mine work.

Dust-exposure history is necessary, but not in and of itself sufficient, to diagnose

legal pneumoconiosis.  As a matter of law, Dr. Gaziano has not established that

Mr. Mullins' pulmonary impairment is significantly related to or substantially

aggravated by coal mine dust exposure.  *See* 20 C.F.R. § 718.201(b).  Legal

pneumoconiosis was not established.

    The Board's reasoning for upholding the crediting of Dr. Gaziano's

diagnosis of legal pneumoconiosis is untenable.  The Board explained it considered

Dr. Gaziano's diagnosis well-reasoned:

23

> Dr. Gaziano based his diagnosis of legal pneumoconiosis on claimant's coal mine employment and smoking histories, a medical history, a physical examination, and the results of a pulmonary function study. The administrative law judge found that Gaziano's opinion, that claimant's COPD was due in part to his coal mine dust exposure, was well-reasoned, noting that it was "supported by the results of his own objective testing, and accounts for [c]laimant's coal dust exposure, without ignoring his significant smoking history." We conclude that substantial evidence in the record supports the administrative law judge's determination that Dr. Gaziano's diagnosis of legal pneumoconiosis was reasoned.

JA 87–88 (citations omitted). This is not the analysis the ALJ provided for finding Dr. Gaziano's opinion well-reasoned; rather, the ALJ concluded Dr. Gaziano's opinion was "well-documented," for being based on work history, symptoms, and examination findings, not "well-reasoned" as the Board instead suggests. *See* JA 73. This analysis cannot be added on appeal to support the ALJ's finding that Dr. Gaziano's opinion is well-reasoned; the ALJ's decision must stand or fall on the reasons he supplied. *See S.E.C. v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Island Creek Coal Co. v. Henline*, 456 F.3d 421 (4th Cir. 2006). Further, Dr. Gaizano's report consisted of all of the elements listed, but the causation opinion only relied on the length of coal mine employment.

Such reasoning does not explain why Dr. Gaziano's opinion is well-reasoned and sufficient to carry Mr. Mullins' burden to establish he has legal pneumoconiosis. As the above discussion illustrates, the lynchpin provided to

justify Dr. Gaziano's diagnosis of legal pneumoconiosis is Mr. Mullins'
dust-exposure history.  Under the Board's rationale for why Dr. Gaziano's opinion
is well-reasoned, *every* examining physician's diagnosis of legal pneumoconiosis
is *per se* "well-reasoned" so long as the physician takes the basic steps all
examining physicians do in black lung claims (inquire into exposure and medical
histories and administer a pulmonary function study) and cites the dust-exposure
history.  Such a rule of law runs counter to the policy of the program, as expressed
in the preamble, and the Board cannot change the policy of the program.  Such a
standard creates an irrebuttable presumption that dust exposure alone is sufficient
to diagnose legal pneumoconiosis, contrary to both the BLBA and the regulatory
preamble, turning a proof-driven scheme into an automatic-entitlement program
based on length of employment.

   Dr. Gaziano failed to bridge the theoretical possibility of legal
pneumoconiosis with the specific and correct facts of Mr. Mullins' case.  Instead,
Dr. Gaziano simply presumed totally disabling legal pneumoconiosis from
dust-exposure history, and an erroneously inflated exposure history at that.  The
ALJ and now the Board ignore the fact that even an accurate dust-exposure history
is insufficient to diagnose totally disabling legal pneumoconiosis or to carry a
claimant's burden of proof.  Because Dr. Gaziano relied solely on the
dust-exposure history to reach his conclusions, and particularly because he

significantly overestimated that exposure history, Dr. Gaziano's opinion is not

well-reasoned and cannot satisfy Mr. Mullins' burden of proof.  The Court should

hold Dr. Gaziano's opinion is insufficiently reasoned as a matter of law to support

a finding of legal pneumoconiosis.  As no other medical opinion supports

Mr. Mullins' claim and Mr. Mullins therefore cannot satisfy his burden of proof,

the award of benefits should also be reversed.  Alternatively, the Court should

vacate the finding that Dr. Gaziano's opinion is well-reasoned and should remand

for the ALJ to re-assess the evidence in a manner consistent with law.

### 2. The ALJ failed to weigh all relevant evidence together in finding pneumoconiosis established by Dr. Alexander's CT-scan interpretation.

The ALJ erred in determining that the March 2006 chest CT-scan, "other

medical evidence" under 20 C.F.R. § 718.107, was positive for pneumoconiosis.

He further erred in finding that, as a result, Mr. Mullins has clinical

pneumoconiosis in opposition to all other relevant evidence of record, which was

negative for clinical pneumoconiosis.

In its 2011 decision, the Board vacated the ALJ's rejection of

Dr. Alexander's reading of the March 2006 CT-scan and required the ALJ, on

remand, to consider both CT-scan readings by Drs. Alexander and Repsher in

determining whether Mr. Mullins has clinical pneumoconiosis.  *See* JA 60.  On

remand, the ALJ found Dr. Alexander interpreted the CT-scan as positive for

simple pneumoconiosis, while Dr. Repsher found the same study did not reveal

pneumoconiosis.  JA 78.  Solely based on Dr. Alexander's board certification in

radiology versus Dr. Repsher's status as a B-reader, the ALJ found the March 2006

CT-scan positive for clinical pneumoconiosis.  *Id.*  When considering clinical

pneumoconiosis, the ALJ found the x-rays negative, the CT-scan positive, and the

medical opinions inadequately reasoned.  *Id.*  He gave the most weight to

Dr. Alexander's positive CT-scan reading and determined Mr. Mullins has clinical

pneumoconiosis.  *Id.*

　　　First, the ALJ did not explain why he chose to elevate the single positive

CT-scan interpretation over the negative x-rays and inconclusive medical opinions

in order to find clinical coal workers' pneumoconiosis.  Similarly, although the

ALJ analyzed each discrete category of evidence relevant to the issue of clinical

coal workers' pneumoconiosis, he did not weigh those categories of evidence

together as the law requires.  *See Compton*, 211 F.3d at 208–10; *Dixie Fuel Co v.*

*Director, OWCP*, 700 F.3d 878, 880–81 (6th Cir. 2012).  The ALJ weighed each

discreet subsection of evidence, listed his conclusions from each, and then

presumed the CT-scan evidence should carry the weight on existence of clinical

pneumoconiosis.  The ALJ failed to provide sufficient rationale why

Dr. Alexander's opinion, above all the radiographic readings and medical-opinion

evidence, should carry the day as to the existence of clinical pneumoconiosis.

Because the ALJ failed to provide sufficient rationale for his weighing of the evidence on the issue of clinical coal workers' pneumoconiosis, the decision must be vacated and remanded for reconsideration of the evidence in a manner consistent with law.

Second, the ALJ failed to explain why Dr. Alexander's conclusions trump Dr. Repsher's conclusions. While Dr. Alexander is a radiologist, the ALJ failed to provide any additional rationale why Dr. Alexander has "superior credentials in CT scan interpretation." *See* JA 78. All cases cited by the ALJ concerning B-reader status pertained only to x-rays, and the ALJ seemed to dismiss Dr. Repsher's opinion as a result, because "a B-reader has not necessarily demonstrated proficiency in assessing and interpreting CT scan evidence of pneumoconiosis." *Id.* The ALJ cites neither a factual rationale nor case law as support that a board certification in radiology necessarily leads to a superior proficiency for interpreting CT-scans as opposed to a B-reader, or that a B-reader is somehow lacking in interpreting CT-scans. *See id.* The ALJ also failed to consider: (1) all relevant qualifications of Dr. Repsher, including that he is a pulmonary specialist; (2) that Dr. Repsher examined Mr. Mullins; (3) that Dr. Repsher had the CT-scan taken as a part of his examination; (4) that Dr. Repsher reviewed extensive medical data beyond the CT-scan; and (5) Dr. Repsher's history of reviewing CT-scans. *See id.*

28

The ALJ should have considered Dr. Repsher's additional qualifications.[10]  *See*

*generally Worhach*, 17 BLR at 1-108 (ALJ's may consider further factors beyond

board certifications to ascertain the professional competence, such as a

professorship in a physician's medical specialty, to weigh the medical evidence).

CT-scans are "other medical evidence" under 20 C.F.R. § 718.107 and must

be assessed differently based on their distinctions from x-rays. ▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* JA 125,

199–200. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ *See* JA 199. ▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

---

[10]     Dr. Repsher is board-certified in internal medicine and pulmonary diseases, in addition to being a NIOSH-certified B-reader.  JA 187.  His practice largely focuses on occupational and environmental lung disease and pulmonary toxicology.  *Id.*  He has done clinical research since 1972 and has been involved with the development of most medicines used to treat asthma and COPD.  *Id.*  He has published several articles in peer-reviewed journals, mostly focusing on asthma and COPD.  JA 188.  Dr. Repsher is also an associate clinical professor of medicine in pulmonary sciences at the University of Colorado Health Sciences Center and has taught regularly in the toxicology division of the University of Arizona Medical School.  JA 189.  Dr. Repsher also outlined his specific experience with CT-scans, including reading CT-scans for the last 12 to 15 years many times over.  JA 200–01.  In fact, it was Dr. Repsher's opinion that demonstrated the medical acceptability of relying on CT-scans in this case.  *See* JA 45, 125.



*See* JA 200.

*See* JA 199–200.

*See* JA 145, 200–01.  The ALJ failed to even consider Dr. Repsher's relevant credentials as compared to Dr. Alexander's in finding the CT-scan positive for coal workers' pneumoconiosis.  If the award is not reversed, the finding of clinical pneumoconiosis should be vacated with instructions to consider these comparative credentials in assessing the CT-scan evidence.

> **3.    The ALJ erred by discrediting the well-reasoned and well-documented opinions of Drs. Repsher and Dahhan.**

On remand, the Board required the ALJ to reweigh all the medical opinion evidence.  JA 59.  In so doing, the ALJ errantly applied an exacting scrutiny to his consideration of the opinions of Drs. Repsher and Dahhan, and a lesser scrutiny to Dr. Gaziano, and found their opinions neither well-reasoned nor well-documented.  Substantial evidence does not support these determinations.

Dr. Gaziano's opinion was summarily found to be supported by the associated clinical testing, history of coal dust exposure, and smoking history.  JA 74.  The ALJ then accorded it full probative weight as to legal pneumoconiosis.

30

*Id.* For the same reason, he accorded it probative weight as to disability causation. JA 79–80. As explained above, Dr. Gaziano's opinion is neither well-reasoned nor well-documented, and the ALJ erred in giving it weight.

Conversely, the ALJ applied significant scrutiny to the opinions of Drs. Repsher and Dahhan, discrediting each, even though Drs. Repsher and Dahhan also relied on consideration of the same types of clinical testing and dust-and-tobacco-smoke–exposure histories the ALJ deemed convincing with respect to Dr. Gaziano. Dr. Repsher was held to have failed to explain his "change in position" regarding whether the March 26, 2006 pulmonary function testing established COPD. JA 75. Then the ALJ found Dr. Repsher's opinion was based on an inaccurate smoking history, due to his testimony that Mr. Mullins' carboxyhemoglobin level at examination indicated smoking at the rate of two and a half to three packages of cigarettes per day. *Id.* The ALJ also found Dr. Repsher's opinion was based on generalities and statistical probabilities. *Id.* Because Dr. Repsher did not diagnose pneumoconiosis, contrary to the ALJ's findings, the ALJ discredited Dr. Repsher's assessment of disability causation. JA 80.

Dr. Repsher's analysis and diagnosis was not internally inconsistent. Rather, the ALJ selectively analyzed the evidence, contrary to the requirements of the APA. *See* 5 U.S.C. § 557(c)(3)(A); *Compton*, 211 F.3d 208–10. ███████

███████████████████████████████████████████████

31



JA 125.

JA 126.

JA 206.

*Id.*

*Id.*

JA 206–07.

*See id.*

*See id.* Accordingly, it was error for the ALJ to

discredit his opinion on that basis as substantial evidence cannot support this

finding.

32

█████████████████████████████████████████████

██████████████████████ JA 125. ████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

JA 205.  While the ALJ discredited Dr. Repsher's opinion as to Mr. Mullins'

smoking history, the ALJ failed to assess what bearing the difference in smoking

histories would have had on Dr. Repsher's credibility.  By comparison, the Board

required the ALJ to assess what bearing Dr. Gaziano's inflated understanding of

Mr. Mullins' dust-exposure history had on Dr. Gaziano's credibility.  *See* JA 58.

The ALJ failed to provide a detailed explanation of why the smoking history, as

understood by Dr. Repsher, undermined Dr. Repsher's credibility in finding Mr.

Mullins did not have pneumoconiosis.  *See* JA 58, 75.  This is erroneous, as the

ALJ failed to apply the same level of scrutiny to the medical opinions.  The ALJ

failed to consider the impact of the scientific clinical testing that substantiated a

greater smoking history, and failed to consider all relevant evidence in

contravention to the BLBA's mandate that all relevant evidence shall be

considered.  *See* 30 U.S.C. § 923(b).

███████████████████████████████████████████████

███████████████████████████████████████████████

██████████████ JA 126–27. █████████████████████

33



*Id.*

*Id.*

JA 207–08.  Thus, the ALJ erroneously assumed that Dr. Repsher's opinion was based on statistical generalities, when those statistics were only used as further support, but not as the sole reason for, his assessment of no pneumoconiosis and no disability due to pneumoconiosis.  The finding of pneumoconiosis was in error, so Dr. Repsher's opinion should not have been discredited for not diagnosing pneumoconiosis.

The ALJ found Dr. Dahhan's opinion unpersuasive as Mr. Mullins' residual impairment following bronchodilators indicated a multifactorial cause of his impairment and that "use of bronchodilators does not necessarily rule out the existence of legal pneumoconiosis."  JA 76.  The ALJ also found Dr. Dahhan's conclusion that Mr. Mullins' not having any exposure to coal dust for three years would indicate any industrial bronchitis would have ceased is contrary to the "potential for latency and progressivity" of pneumoconiosis as defined by the

34

DOL.  *Id.*  Finally, the ALJ found Dr. Dahhan's opinion does not speak to "whether Claimant's impairment was 'significantly related to, or substantially aggravated by' his coal mine employment."  *Id.*  Thus, the ALJ found his opinion was not well-reasoned and gave it little weight as to legal pneumoconiosis.  *Id.*  Because Dr. Dahhan did not diagnose pneumoconiosis, contrary to the ALJ's findings, the ALJ discredited Dr. Dahhan's opinion on disability causation.  JA 80.

Contrary to the ALJ's analysis, Dr. Dahhan is not required to "rule out" legal pneumoconiosis and the ALJ applied the wrong legal standard.  The post-bronchodilator pulmonary function tests are part of a miner's complete pulmonary examination and a physician may rely upon that testing to form the basis for an opinion. The regulations do not mandate that all obstructive lung disease be deemed due to coal mine dust exposure.  Rather, a causative link to coal mine dust must be found to establish coal workers' pneumoconiosis.  *See* 20 C.F.R. § 718.201(b).  Mr. Mullins retains the burden to prove all elements of entitlement by a preponderance of the evidence.  *See Director, OWCP v. Greenwich Collieries*, 512 U.S. 267 (1994).  Thus, the ALJ erred in applying an erroneous and heightened standard in analyzing Dr. Dahhan's opinion.

██████████████████████████████████

██████████████████████████████████

*See* JA 178.  ██████████████████████████

████████████████████████████████████

██████████████████████████████████ Dr. Dahhan's

assessment concerning industrial bronchitis is also not pertinent to the ALJ's

findings in this case, as the ALJ found legal pneumoconiosis in the form of COPD,

as diagnosed by Dr. Gaziano. *See* JA 74. ████████████████████████

██████████████ *See* JA 110, 221. Any opinion of Dr. Dahhan concerning

industrial bronchitis would be immaterial to whether Mr. Mullins has legal

pneumoconiosis—COPD—as only diagnosed by Dr. Gaziano. Again, as with the

smoking history, the ALJ failed to explain what impact Dr. Dahhan's statement

regarding industrial bronchitis has to the overall credibility of his opinion.

*See* JA 58. This is error.

The ALJ's reasoning is not supported by substantial evidence. Dr. Dahhan's

opinion directly addressed whether Mr. Mullins' impairment was significantly

contributed to or substantially aggravated by coal mine dust exposure. ██████████

███████████████████████████████████

███████████████████████████████████

██████████████ JA 147. ██████████████████████████

███████████████████████████████████

████████████████████████ *Id.* ██████████████████



JA 178. ██████████████████████████

████████████ *Id.* ████████████████████

███████████████████████████████

████████████████████████████████

████████████████████████ JA 180. ████████

████████████████████████████████

████████████████████

 Drs. Repsher and Dahhan's opinions were based on the medical evidence of record and relevant medical literature which supported their overall analyses and conclusions.  Accordingly, the ALJ erred by discrediting their opinions and applying an inflated level of scrutiny to their opinions as opposed to the opinion of Dr. Gaziano.  The Court should vacate and remand for consideration of Dr. Repsher's and Dr. Dahhan's opinions in a manner consistent with law.

## VI.    CONCLUSION

The West Virginia CWP Fund, as carrier for Pen Coal Corporation, respectfully requests the Board's decision and order affirming the ALJ's award of benefits be reversed, or in the alternative, vacated and remanded for reconsideration under the BLBA and black lung regulations.


Respectfully submitted,

**WEST VIRGINIA CWP FUND, as carrier for PEN COAL CORPORATION,**

By Counsel.


/s/ Jeffrey R. Soukup
Jeffrey R. Soukup
Kentucky Bar No. 92029
Jackson Kelly PLLC
175 E. Main St., Ste. 500
Lexington, KY 40507
(859) 288-2826

## VII.    REQUEST FOR ORAL ARGUMENT

This case presents questions of law important for consideration of claims under the BLBA.  The agency's decision suggests a benefits claimant can carry the burden to establish legal pneumoconiosis through no more than a conclusory medical opinion that relies on an errantly inflated history of coal mine dust exposure to diagnose legal pneumoconiosis.  The West Virginia CWP Fund respectfully requests this matter be set for oral argument to assist this Court in understanding the full extent of the medical, legal, and factual issues presented by the case.

# VIII.    ADDENDUM OF STATUTES, RULES, and REGULATIONS

**30 U.S.C. § 921:**

(a) Promulgation; payment of benefits

The Secretary shall, in accordance with the provisions of this part, and the regulations promulgated by him under this part, make payments of benefits in respect of total disability of any miner due to pneumoconiosis, and in respect of the death of any miner whose death was due to pneumoconiosis or, except with respect to a claim filed under part C of this subchapter on or after the effective date of the Black Lung Benefits Amendments of 1981, who at the time of his death was totally disabled by pneumoconiosis.

(b) Promulgation of standards determining total disability

The Secretary shall by regulation prescribe standards for determining for purposes of subsection (a) of this section whether a miner is totally disabled due to pneumoconiosis and for determining whether the death of a miner was due to pneumoconiosis. Regulations required by this subsection shall be promulgated and published in the Federal Register at the earliest practicable date after December 30, 1969, and in no event later than the end of the third month following December 1969. Final regulations required for implementation of any amendments to this subchapter shall be promulgated and published in the Federal Register at the earliest practicable date after the date of enactment of such amendments, and in no event later than the end of the fourth month following the month in which such amendments are enacted. Such regulations may be modified or additional regulations promulgated from time to time thereafter.

(c) Presumptions

For purposes of this section--

> **(1)** If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines there shall be a rebuttable presumption that his pneumoconiosis arose out of such employment.

> **(2)** If a deceased miner was employed for ten years or more in one or more coal mines and died from a respirable disease there shall be a rebuttable

40

presumption that his death was due to pneumoconiosis. The provisions of this paragraph shall not apply with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981.

(3) If a miner is suffering or suffered from a chronic dust disease of the lung which (A) when diagnosed by chest roentgenogram, yields one or more large opacities (greater than one centimeter in diameter) and would be classified in category A, B, or C in the International Classification of Radiographs of the Pneumoconioses by the International Labor Organization, (B) when diagnosed by biopsy or autopsy, yields massive lesions in the lung, or (C) when diagnosis is made by other means, would be a condition which could reasonably be expected to yield results described in clause (A) or (B) if diagnosis had been made in the manner prescribed in clause (A) or (B), then there shall be an irrebuttable presumption that he is totally disabled due to pneumoconiosis or that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. as the case may be.

(4) if a miner was employed for fifteen years or more in one or more underground coal mines, and if there is a chest roentgenogram submitted in connection with such miner's, his widow's, his child's, his parent's, his brother's, his sister's, or his dependent's claim under this subchapter and it is interpreted as negative with respect to the requirements of paragraph (3) of this subsection, and if other evidence demonstrates the existence of a totally disabling respiratory or pulmonary impairment, then there shall be a rebuttable presumption that such miner is totally disabled due to pneumoconiosis, that his death was due to pneumoconiosis, or that at the time of his death he was totally disabled by pneumoconiosis. In the case of a living miner, a wife's affidavit may not be used by itself to establish the presumption. The Secretary shall not apply all or a portion of the requirement of this paragraph that the miner work in an underground mine where he determines that conditions of a miner's employment in a coal mine other than an underground mine were substantially similar to conditions in an underground mine. The Secretary may rebut such presumption only by establishing that (A) such miner does not, or did not, have pneumoconiosis, or that (B) his respiratory or pulmonary impairment did not arise out of, or in connection with, employment in a coal mine.

(5) In the case of a miner who dies on or before March 1, 1978, who was employed for 25 years or more in one or more coal mines before June 30,

41

1971, the eligible survivors of such miner shall be entitled to the payment of benefits, at the rate applicable under section 922(a)(2) of this title, unless it is established that at the time of his or her death such miner was not partially or totally disabled due to pneumoconiosis. Eligible survivors shall, upon request by the Secretary, furnish such evidence as is available with respect to the health of the miner at the time of his or her death. The provisions of this paragraph shall not apply with respect to claims filed on or after the day that is 180 days after the effective date of the Black Lung Benefits Amendments of 1981.

(d) Applicability of presumptions

Nothing in subsection (c) of this section shall be deemed to affect the applicability of subsection (a) of this section in the case of a claim where the presumptions provided for therein are inapplicable.

**30 U.S.C. § 923:**

(a) Promulgation of regulations; time requirement

Except as otherwise provided in section 924 of this title, no payment of benefits shall be made under this part except pursuant to a claim filed therefor on or before December 31, 1973, in such manner, in such form, and containing such information, as the Secretary shall by regulation prescribe.

(b) Utilization of personnel and procedures; evidence required to establish claim; medical evidence; affidavits; autopsy reports; reimbursement of expenses

No claim for benefits under this part shall be denied solely on the basis of the results of a chest roentgenogram. In determining the validity of claims under this part, all relevant evidence shall be considered, including, where relevant, medical tests such as blood gas studies, X-ray examination, electrocardiogram, pulmonary function studies, or physical performance tests, and any medical history, evidence submitted by the claimant's physician, or his wife's affidavits, and in the case of a deceased miner, other appropriate affidavits of persons with knowledge of the miner's physical condition, and other supportive materials. Where there is no medical or other relevant evidence in the case of a deceased miner, such affidavits, from persons not eligible for benefits in such case with respect to claims filed on or after the effective date of the Black Lung Benefits Amendments of 1981, shall be considered to be sufficient to establish that the miner was totally disabled due to

pneumoconiosis or that his or her death was due to pneumoconiosis. In any case, other than that involving a claim filed on or after the effective date of the Black Lung Benefits Amendments of 1981, in which there is other evidence that a miner has a pulmonary or respiratory impairment, the Secretary shall accept a board certified or board eligible radiologist's interpretation of a chest roentgenogram which is of a quality sufficient to demonstrate the presence of pneumoconiosis submitted in support of a claim for benefits under this subchapter if such roentgenogram has been taken by a radiologist or qualified technician, except where the Secretary has reason to believe that the claim has been fraudulently represented. In order to insure that any such roentgenogram is of adequate quality to demonstrate the presence of pneumoconiosis, and in order to provide for uniform quality in the roentgenograms, the Secretary of Labor may, by regulation, establish specific requirements for the techniques used to take roentgenograms of the chest. Unless the Secretary has good cause to believe that an autopsy report is not accurate, or that the condition of the miner is being fraudulently misrepresented, the Secretary shall accept such autopsy report concerning the presence of pneumoconiosis and the stage of advancement of pneumoconiosis. Claimants under this part shall be reimbursed for reasonable medical expenses incurred by them in establishing their claims. For purposes of determining total disability under this part, the provisions of subsections (a), (b), (c), (d), and (g) of section 221 of such Act shall be applicable. The provisions of sections 204, 205(a), (b), (d), (e), (g), (h), (j), (k), (l), and (n), 206, 207, and 208 of the Social Security Act shall be applicable under this part with respect to a miner, widow, child, parent, brother, sister, or dependent, as if benefits under this part were benefits under Title II of such Act. Each miner who files a claim for benefits under this subchapter shall upon request be provided an opportunity to substantiate his or her claim by means of a complete pulmonary evaluation.

(c) Filing of claim for workmen's compensation; necessity; exceptions

No claim for benefits under this section shall be considered unless the claimant has also filed a claim under the applicable State workmen's compensation law prior to or at the same time his claim was filed for benefits under this section; except that the foregoing provisions of this paragraph shall not apply in any case in which the filing of a claim under such law would clearly be futile because the period within which such a claim may be filed thereunder has expired or because pneumoconiosis is not compensable under such law, or in any other situation in which, in the opinion of the Secretary, the filing of a claim would clearly be futile.

(d) Employment termination and benefits entitlement

43

No miner who is engaged in coal mine employment shall (except as provided in section 921(c)(3) of this title) be entitled to any benefits under this part while so employed. Any miner who has been determined to be eligible for benefits pursuant to a claim filed while such miner was engaged in coal mine employment shall be entitled to such benefits if his or her employment terminates within one year after the date such determination becomes final.

**20 C.F.R. § 718.107 (2014):**

(a) The results of any medically acceptable test or procedure reported by a physician and not addressed in this subpart, which tends to demonstrate the presence or absence of pneumoconiosis, the sequelae of pneumoconiosis or a respiratory or pulmonary impairment, may be submitted in connection with a claim and shall be given appropriate consideration.

(b) The party submitting the test or procedure pursuant to this section bears the burden to demonstrate that the test or procedure is medically acceptable and relevant to establishing or refuting a claimant's entitlement to benefits.

**20 C.F.R. § 718.201 (2014):**

(a) For the purpose of the Act, "pneumoconiosis" means a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment. This definition includes both medical, or "clinical", pneumoconiosis and statutory, or "legal", pneumoconiosis.

(1) Clinical Pneumoconiosis. "Clinical pneumoconiosis" consists of those diseases recognized by the medical community as pneumoconiosis, i.e., the conditions characterized by permanent deposition of substantial amounts of particulate matter in the lungs and the fibrotic reaction of the lung tissue to that deposition caused by dust exposure in coal mine employment. This definition includes, but is not limited to, coal workers' pneumoconiosis, anthracosilicosis, anthracosis, anthrosilicosis, massive pulmonary fibrosis, silicosis or silicotuberculosis, arising out of coal mine employment.

(2) Legal Pneumoconiosis. "Legal pneumoconiosis" includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment. This definition includes, but is not limited to, any chronic

restrictive or obstructive pulmonary disease arising out of coal mine employment.

(b) For purposes of this section, a disease "arising out of coal mine employment" includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment.

(c) For purposes of this definition, "pneumoconiosis" is recognized as a latent and progressive disease which may first become detectable only after the cessation of coal mine dust exposure.

**20 C.F.R. § 718.202 (2014):**

(a) A finding of the existence of pneumoconiosis may be made as follows in paragraphs (a)(1) through (4) of this section:

(1) A chest X–ray conducted and classified in accordance with § 718.102 may form the basis for a finding of the existence of pneumoconiosis. Except as otherwise provided in this section, where two or more X–ray reports are in conflict, in evaluating such X–ray reports consideration must be given to the radiological qualifications of the physicians interpreting such X–rays (see § 718.102(d)).

(2) A biopsy or autopsy conducted and reported in compliance with § 718.106 may be the basis for a finding of the existence of pneumoconiosis. A finding in an autopsy or biopsy of anthracotic pigmentation, however, must not be considered sufficient, by itself, to establish the existence of pneumoconiosis. A report of autopsy must be accepted unless there is evidence that the report is not accurate or that the claim has been fraudulently represented.

(3) If the presumptions described in § 718.304 or § 718.305 are applicable, it must be presumed that the miner is or was suffering from pneumoconiosis.

(4) A determination of the existence of pneumoconiosis may also be made if a physician, exercising sound medical judgment, notwithstanding a negative X–ray, finds that the miner suffers or suffered from pneumoconiosis as defined in § 718.201. Any such finding must be based on objective medical evidence such as blood-gas studies, electrocardiograms, pulmonary function

45

studies, physical performance tests, physical examination, and medical and work histories. Such a finding must be supported by a reasoned medical opinion.

(b) A claim for benefits must not be denied solely on the basis of a negative chest X–ray.

(c) A determination of the existence of pneumoconiosis must not be made--

(1) Solely on the basis of a living miner's statements or testimony; or

(2) In a claim involving a deceased miner, solely on the basis of the affidavit(s) (or equivalent testimony) of the claimant and/or his or her dependents who would be eligible for augmentation of the claimant's benefits if the claim were approved.

**20 C.F.R. § 718.203 (2014):**

(a) In order for a claimant to be found eligible for benefits under the Act, it must be determined that the miner's pneumoconiosis arose at least in part out of coal mine employment. The provisions in this section set forth the criteria to be applied in making such a determination.

(b) If a miner who is suffering or suffered from pneumoconiosis was employed for ten years or more in one or more coal mines, there shall be a rebuttable presumption that the pneumoconiosis arose out of such employment.

(c) If a miner who is suffering or suffered from pneumoconiosis was employed less than ten years in the nation's coal mines, it shall be determined that such pneumoconiosis arose out of that employment only if competent evidence establishes such a relationship.

**20 C.F.R. § 718.204 (2014):**

(a) General. Benefits are provided under the Act for or on behalf of miners who are totally disabled due to pneumoconiosis, or who were totally disabled due to pneumoconiosis at the time of death. For purposes of this section, any nonpulmonary or nonrespiratory condition or disease, which causes an independent disability unrelated to the miner's pulmonary or respiratory disability, shall not be considered in determining whether a miner is totally disabled due to

46

pneumoconiosis. If, however, a nonpulmonary or nonrespiratory condition or disease causes a chronic respiratory or pulmonary impairment, that condition or disease shall be considered in determining whether the miner is or was totally disabled due to pneumoconiosis.

(b)(1) Total disability defined. A miner shall be considered totally disabled if the irrebuttable presumption described in § 718.304 applies. If that presumption does not apply, a miner shall be considered totally disabled if the miner has a pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner:

(i) From performing his or her usual coal mine work; and

(ii) From engaging in gainful employment in the immediate area of his or her residence requiring the skills or abilities comparable to those of any employment in a mine or mines in which he or she previously engaged with some regularity over a substantial period of time.

(2) Medical criteria. In the absence of contrary probative evidence, evidence which meets the standards of either paragraphs (b)(2)(i), (ii), (iii), or (iv) of this section shall establish a miner's total disability:

(i) Pulmonary function tests showing values equal to or less than those listed in Table B1 (Males) or Table B2 (Females) in Appendix B to this part for an individual of the miner's age, sex, and height for the $FEV_1$ test; if, in addition, such tests also reveal the values specified in either paragraph (b)(2)(i)(A) or (B) or (C) of this section:

(A) Values equal to or less than those listed in Table B3 (Males) or Table B4 (Females) in Appendix B of this part, for an individual of the miner's age, sex, and height for the FVC test, or

(B) Values equal to or less than those listed in Table B5 (Males) or Table B6 (Females) in Appendix B to this part, for an individual of the miner's age, sex, and height for the MVV test, or

47

(C) A percentage of 55 or less when the results of the $FEV_1$ test are divided by the results of the FVC test ($FEV_1$/FVC equal to or less than 55%), or

(ii) Arterial blood-gas tests show the values listed in Appendix C to this part, or

(iii) The miner has pneumoconiosis and has been shown by the medical evidence to be suffering from cor pulmonale with right-sided congestive heart failure, or

(iv) Where total disability cannot be shown under paragraphs (b)(2)(i), (ii), or (iii) of this section, or where pulmonary function tests and/or blood gas studies are medically contraindicated, total disability may nevertheless be found if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in employment as described in paragraph (b)(1) of this section.

(c)(1) Total disability due to pneumoconiosis defined. A miner shall be considered totally disabled due to pneumoconiosis if pneumoconiosis, as defined in § 718.201, is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment. Pneumoconiosis is a "substantially contributing cause" of the miner's disability if it:

(i) Has a material adverse effect on the miner's respiratory or pulmonary condition; or

(ii) Materially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment.

(2) Except as provided in § 718.305 and paragraph (b)(2)(iii) of this section, proof that the miner suffers or suffered from a totally disabling respiratory or pulmonary impairment as defined in paragraphs (b)(2)(i), (b)(2)(ii), (b)(2)(iv) and (d) of this section shall not, by itself, be sufficient to establish that the miner's impairment is or was due to pneumoconiosis. Except as provided in paragraph (d), the cause or causes of a miner's total disability

48

shall be established by means of a physician's documented and reasoned medical report.

(d) Lay evidence. In establishing total disability, lay evidence may be used in the following cases:

(1) In a case involving a deceased miner in which the claim was filed prior to January 1, 1982, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total (or under § 718.306 partial) disability due to pneumoconiosis if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition.

(2) In a case involving a survivor's claim filed on or after January 1, 1982, but prior to June 30, 1982, which is subject to § 718.306, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total or partial disability due to pneumoconiosis if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination shall not be based solely upon the affidavits or testimony of the claimant and/or his or her dependents who would be eligible for augmentation of the claimant's benefits if the claim were approved.

(3) In a case involving a deceased miner whose claim was filed on or after January 1, 1982, affidavits (or equivalent sworn testimony) from persons knowledgeable of the miner's physical condition shall be sufficient to establish total disability due to pneumoconiosis if no medical or other relevant evidence exists which addresses the miner's pulmonary or respiratory condition; however, such a determination shall not be based solely upon the affidavits or testimony of any person who would be eligible for benefits (including augmented benefits) if the claim were approved.

(4) Statements made before death by a deceased miner about his or her physical condition are relevant and shall be considered in making a determination as to whether the miner was totally disabled at the time of death.

(5) In the case of a living miner's claim, a finding of total disability due to pneumoconiosis shall not be made solely on the miner's statements or testimony.

49

(e) In determining total disability to perform usual coal mine work, the following shall apply in evaluating the miner's employment activities:

(1) In the case of a deceased miner, employment in a mine at the time of death shall not be conclusive evidence that the miner was not totally disabled. To disprove total disability, it must be shown that at the time the miner died, there were no changed circumstances of employment indicative of his or her reduced ability to perform his or her usual coal mine work.

(2) In the case of a living miner, proof of current employment in a coal mine shall not be conclusive evidence that the miner is not totally disabled unless it can be shown that there are no changed circumstances of employment indicative of his or her reduced ability to perform his or her usual coal mine work.

(3) Changed circumstances of employment indicative of a miner's reduced ability to perform his or her usual coal mine work may include but are not limited to:

(i) The miner's reduced ability to perform his or her customary duties without help; or

(ii) The miner's reduced ability to perform his or her customary duties at his or her usual levels of rapidity, continuity or efficiency; or

(iii) The miner's transfer by request or assignment to less vigorous duties or to duties in a less dusty part of the mine.

50

## IX.    CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

Certificate of Compliance with Type-Volume Limitations,
Typeface Requirements, and Type-Style Requirements

No.14-2342     Caption:  <u>West Virginia CWP Fund v. Steven Mullins</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

   this brief contains **<u>8,537</u>** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

   this brief has been prepared in a proportionally spaced typeface using Microsoft Word  2010 Version in Times New Roman 14 point font.


<u>/s/</u> Jeffrey R. Soukup
*Counsel for West Virginia CWP Fund*

Dated: February 10, 2015

## X.    CERTIFICATE OF SERVICE

The undersigned counsel hereby certifies that the **Opening Brief of**

**Petitioner, West Virginia CWP Fund,** was served upon the following by

electronic delivery and UPS Ground this **10th** day of February, 2015.

**ELECTRONIC &**            Patricia S. Connor, Clerk of Court
**OVERNIGHT:**              United States Court of Appeals for the Fourth Circuit
                           Lewis F. Powell, Jr. United States Courthouse Annex
                           1100 E. Main Street, Suite 501
                           Richmond, VA  23219-3517


**ELECTRONIC:**            Leonard J. Stayton, Esq.
                           P. O. Box 1386
                           Inez, KY  41224
                           staytonlawoffice@bellsouth.net

                           Helen H. Cox, Esq.
                           U. S. Department of Labor
                           Office of the Solicitor
                           200 Constitution Avenue, N.W., Suite N-2119
                           Washington, DC  20210
                           blls-sol@dol.gov



                           /s/ Jeffrey R. Soukup
                           *Counsel for West Virginia CWP Fund*